# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

TAUNYA F.,[1]                         )
                                      )
            Plaintiff,                )
                                      )        CIVIL ACTION
v.                                    )
                                      )        No. 19-1326-JWL
ANDREW M. SAUL,                       )
Commissioner of Social Security,      )
                                      )
            Defendant.                )
_____)

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act).  Finding the Administrative Law Judge (ALJ) applied the incorrect legal standard in evaluating the treating source medical opinions, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REVERSING the Commissioner's final decision and REMANDING the case for further proceedings consistent with this decision.

## I.    Background

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Plaintiff protectively filed an application for DIB on December 30, 2016. (R. 12). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ erred in weighing the treating source medical opinions and in discounting her allegations of disabling symptoms.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

2

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  On remand the Commissioner must assess Plaintiff's RFC in accordance with the correct legal standard.  RFC assessment includes evaluation of the claimant's allegations of disabling symptoms.  Therefore, the court will not provide an advisory opinion on such evaluation and Plaintiff may make her arguments in that regard to the Commissioner on remand.

## I.      Evaluation of the Treating Medical Source Opinions

Plaintiff claims the ALJ erred in addressing all the treating source opinions[2] "together in one paragraph" and in failing to state the weight accorded the medical opinion of each treating source and to state the reasons for discounting each opinion.  (Pl.

---

[2] Plaintiff asserts one of the opinions is that of a physician assistant (Pl. Br. 14), but it appears all the opinions are signed by physicians.  Nonetheless, were one opinion not that of an acceptable medical source, it would have no material effect on this decision.

Br. 14) (citing <u>Krauser v. Astrue</u>, 638 F.3d 1324, 1330 (10th Cir. 2011); <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1082-1083 (10th Cir. 2004)).  Plaintiff also argues that the reasons given to discount the opinions collectively are erroneous,  The court need not decide that issue because it agrees with Plaintiff that the ALJ applied an incorrect legal standard and remand is therefore necessary.  The Commissioner may consider Plaintiff's arguments regarding the sufficiency of the evidence on remand.

> The Commissioner responded:

> The ALJ considered these opinions collectively as they were very similar (Tr. 19).  He noted that all of the opinions suggested that Plaintiff was unable to sustain a full day of work activity, with minimal to no lifting, 25-50% loss in productivity and concentration, a need for extra breaks, and excessive absences (Tr. 19).

(Comm'r Br. 8).  He argues the reasons given for discounting the opinions were reasonable.  <u>Id.</u> at 8-9.  He points out that courts in this circuit have refused to remand merely because an ALJ failed to explicitly state a treating source opinion was not accorded controlling weight.  <u>Id.</u> at 10.  He continues,

> Similarly, while it would have been preferable for the ALJ to specify what weight he provided to these opinions, a subsequent reviewer can ascertain from the ALJ's decision that he gave these opinions little to no weight, providing reasons for that weight and, therefore, no reversible error has occurred.

<u>Id.</u> at 11.

## A.    The Standard for Evaluating Medical Opinions

For claims filed before March 27, 2017, "[m]edical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [claimant's] symptoms, diagnosis and prognosis,

what [claimant] can still do despite impairment(s), and [claimant's] physical or mental

restrictions." 20 C.F.R. § 404.1527(a)(1). Such opinions may not be ignored and, unless

a treating source opinion is given controlling weight, <u>all</u> medical opinions will be

evaluated by the Commissioner in accordance with factors contained in the regulations.

<u>Id.</u> § 404.1527(c); SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp.

2020). A physician who has treated a patient frequently over an extended period is

expected to have greater insight into the patient's medical condition, and his opinion is

generally entitled to "particular weight." <u>Doyal v. Barnhart</u>, 331 F.3d 758, 762 (10th Cir.

2003). But, "the opinion of an examining physician who only saw the claimant once is

not entitled to the sort of deferential treatment accorded to a treating physician's

opinion." <u>Id.</u> at 763 (citing <u>Reid v. Chater</u>, 71 F.3d 372, 374 (10th Cir. 1995)). However,

opinions of nontreating sources are generally given more weight than the opinions of

nonexamining sources who have merely reviewed the medical record. <u>Robinson v.</u>

<u>Barnhart</u>, 366 F.3d 1078, 1084 (10th Cir. 2004); <u>Talbot v. Heckler</u>, 814 F.2d 1456, 1463

(10th Cir. 1987) (citing <u>Broadbent v. Harris</u>, 698 F.2d 407, 412 (10th Cir. 1983), <u>Whitney</u>

<u>v. Schweiker</u>, 695 F.2d 784, 789 (7th Cir. 1982), and <u>Wier ex rel. Wier v. Heckler</u>, 734

F.2d 955, 963 (3d Cir. 1984)).

 "If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of

the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by

medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not

inconsistent with the other substantial evidence in [claimant's] case record, [the

Commissioner] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2); <u>see also</u>,

SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2018) ("Giving Controlling Weight to Treating Source Medical Opinions").

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citing SSR 96-2p). The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" Id. at 1300 (quoting SSR 96-2p). If the opinion is well-supported, the ALJ must confirm that the opinion is also consistent with other substantial evidence in the record. Id. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

If the treating source opinion is not given controlling weight, the inquiry does not end. Id. A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1301; 20 C.F.R. § 404.1527(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the factors, the ALJ must give reasons in the decision for the weight he gives the treating source opinion. Id. 350 F.3d at 1301. "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so." Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

### B.      The ALJ's Findings

As Plaintiff suggests, the ALJ evaluated all treating source medical opinions in a single paragraph:

> I have also considered the treating source statements from the claimant's primary care provider and neurologist, who suggested the claimant is unable to sustain a full day of 8 hour work activity, with no lifting (not even 0 to 4 pounds), with up to 50% loss of productivity and concentration, need for extra breaks and excessive absences (Exhibits 11F, 14F, 20F, 23F/2-4, and 24F). These treating opinions are contrary to the claimant's level of activity at home and out of the house, and such limitations are not supported by ongoing objective medical evidence showing weakness or neurologic changes.

(R. 19).

### C.      Analysis

As Plaintiff's Brief suggests, the SSA applied the "treating physician rule," the standard explained above, for many years until it changed the regulations and abrogated that rule for claims filed with the agency on or after March 27, 2017. See, e.g., 20 C.F.R. § 404.1520c (2017) ("How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017"); Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,854, 2017 WL 168819 (SSA Jan. 18, 2017) ("we are adopting rules that focus more on the

content of medical opinions and less on weighing treating relationships against each

other"). As noted, the new regulations focus on the content of medical opinions and not

on relative weighing of opinions.

There is a long history of case law evaluating and explaining the treating physician

rule in the Tenth Circuit. That law is precedent binding this court to a particular

application of the treating physician rule to cases filed with the Commissioner before

March 27, 2017, as was the case at issue here. As Plaintiff argues, the Tenth Circuit has

held that "'[u]nder the regulations, the agency rulings, and our case law, an ALJ must

give good reasons ... for the weight assigned to a treating physician's opinion,' that are

'sufficiently specific to make clear to any subsequent reviewers the weight the

adjudicator gave to the treating source's medical opinions and the reason for that

weight.'" Robinson, 366 F.3d at 1082 (quoting Watkins, 350 F.3d at 1300). The ALJ's

collective evaluation of the neurologist's and primary care provider's opinions does not

state whether he accorded controlling weight to the opinions (although it is clear he did

not) and it does not state the lesser weight accorded to each opinion. While the court can

tell that substantial record evidence supports the determination not to accord controlling

weight, the only way to determine what lesser weight was, or should have been, accorded

would be for the court to weigh the opinions in the first instance, a task which it is

forbidden under the substantial evidence standard of review. Bowman, 511 F.3d at 1272;

Hackett, 395 F.3d at 1172; Bowling, 36 F.3d at 434.

Perhaps more importantly in the court's evaluation, is that the ALJ evaluated all

the treating source opinions collectively. Under the treating physician rule, an ALJ is

required to consider whether to give a treating physician's opinion controlling weight; if not, to consider what lesser weight to give it; and if it is rejected, to provide specific, legitimate reasons for doing so.  In attempting to "weigh" the opinions collectively, the ALJ has left the court unable to discern how each of the treating source opinions (five of them) were considered.  The individual weighing requirement for medical opinions under the treating physician rule is confirmed by the SSA's specific change in the new regulations for cases filed on or after March 27, 2017.  The new regulations require "when a medical source provides multiple medical opinion(s) … [the agency] will articulate how we considered the medical opinions … from that medical source together in a single analysis."  20 C.F.R. § 404.1520c(b)(1) (2017).

In light of the ALJ's evaluation of the examining psychologist's opinion and of the state agency psychologists' opinions individually, his evaluation of the treating source opinions collectively, and of the recent change in regulations stressing a more generalized consideration of medical opinions without relative weighing of the opinions, it appears the ALJ applied a mixture of the two standards, and thereby applied the incorrect legal standard in his evaluation of the treating source medical opinions.  The court is aware of and tends to agree with the Commissioner's view that courts, in reviewing SSA decisions under the treating physician rule were "reweighing evidence instead of applying the substantial evidence standard of review."  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5,853.  However, in this case the ALJ did not properly weigh the opinions in accordance with the treating physician rule as explained

by the Tenth Circuit, and this court may not reweigh the evidence.  Remand is therefore

necessary for a proper application of the treating physician rule.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the

fourth sentence of 42 U.S.C. § 405(g) REVERSING the Commissioner's final decision

and REMANDING the case for further proceedings consistent with this decision.

Dated January 5, 2021, at Kansas City, Kansas.


s:/  *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**